```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CARLO NOVELLA, On His Own Behalf and On    :
Behalf of All Similarly Situated,          :
                                           :
                    Plaintiff,             :   02 Civ. 2192 (MBM)
                                           :   OPINION AND ORDER
          -against-                        :
                                           :
WESTCHESTER COUNTY, NEW YORK CARPENTERS'   :
PENSION FUND, and BOARD OF TRUSTEES OF     :
WESTCHESTER COUNTY, NEW YORK CARPENTERS'   :
PENSION FUND,                              :
                                           :
                    Defendants.            :
------------------------------------X
```

APPEARANCES:

EDGAR PAUK, ESQ.
(Attorney for Plaintiff)
144 East 44th Street, Suite 600
New York, NY 10017
(212) 983-4000

ROBERT T. MCGOVERN, ESQ.
(Attorney for Defendants)
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
1505 Kellum Place
Mineola, NY 11501
(516) 741-6565

MICHAEL B. MUKASEY, U.S.D.J.

In a class action complaint, plaintiff Carlo Novella sued defendants Westchester County and New York Carpenters' Pension Fund ("the Fund") and its Board of Trustees on the ground that they refused to award him a pension in the amount to which he was entitled under the Westchester Fund's pension plan ("the Plan"). Novella was awarded summary judgment on his claim that by using two different benefit rates to calculate the amount of his pension, defendants violated the terms of the Plan. His other claims were dismissed as either moot or unexhausted. Pursuant to Fed. R. Civ. P. 23, Novella moved for class certification and, on December 29, 2004, this court determined that the class consisted of only disability pensioners under the Plan, their beneficiaries, and estates. It was further determined that such a class meets the Fed. R. Civ. P. Rule 23 requirements for commonality, typicality, and adequacy of representation, as well as the Fed. R. Civ. P. Rule 23(b)(1) requirement that the defendant must, by law or necessity, treat all members of the class alike. However, the determination of whether the numerosity requirement of Fed. R. Civ. P. Rule 23 was met was reserved until the parties resolved a discovery dispute. That dispute has been resolved and for the reasons explained below it appears that the proposed class of disability pensioners under the Plan meets the numerosity requirement. Therefore, the

1

case will proceed as a class action.

I.

Detailed accounts of the underlying dispute appear in this court's Opinion and Order dated August 4, 2004 and Opinion and Order dated December 29, 2004. See Novella v. Westchester County, New York Carpenters' Pension Fund, Bd. of Trustees of Westchester County, New York Carpenters' Pension Fund, No. 02 civ. 2192, 2004 WL 1752820 (S.D.N.Y. Aug. 4, 2004); Novella v. Westchester County, New York Carpenters' Pension Fund, Bd. of Trustees of Westchester County, New York Carpenters' Pension Fund, No. 02 civ. 2192, 2004 WL 3035405 (S.D.N.Y. Dec. 29, 2004). In summary, Novella worked as a carpenter in Westchester County and New York City from 1962 through 1995 and was a participant in the Plan. (Id. at *1) Plan participants earn pension credits based on hours of service in jobs covered by the Plan. (Id.) Novella earned pension credits during two periods: 1962 through 1981 and 1987 through 1995. (Id.) He earned no pension credits from 1982 through 1986 because he worked during that period in jobs covered by a different pension plan. (Id.)

In 1995, Novella suffered a disabling accident at work. (Id.) He applied for Early Retirement Pension under the Plan, which was converted later to Disability Pension. (Id.) In calculating Novella's pension credits for the 1962-81 period, defendants "froze" the benefit rate in effect at the time Novella

2

discontinued work covered by the Plan. (Id.)  In calculating pension credits for the 1987-95 period, defendants applied the benefit rate then in effect, which was higher than the rate for the 1962-81 period. (Id.)  By applying two different benefit rates in calculating Novella's Disability Pension, defendants claimed to be following Section 3.07 of the Plan, which pertains to Deferred Pensions.  Novella sued, claiming that defendants' application of the two benefit rates violated the terms of the Plan or, in the one instance when the practice was consistent with the Plan, that the Plan violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 (2000), et seq.

Novella was granted summary judgment on his Sixth Claim for Relief, specifically that defendants' application of two benefit rates to pension credits earned by Novella -- or treating his Disability Pension like a Deferred Pension -- was an arbitrary and capricious interpretation of the Plan. Novella, 2004 WL 175280, at * 3.  Novella's Third, Fourth, Fifth, and Seventh Claims for Relief, which alleged that the Plan violated various ERISA provisions if the Plan allowed defendants to apply two benefit rates to his pension, were dismissed as moot. Id. at *5.  Novella's First and Second Claims, which arise from defendants' refusal to credit him with hours of service and pension credits during the time he received workers' compensation benefits, were dismissed without prejudice because Novella failed

to inform Plan administrators that he received workers' compensation benefits and to ask for pension credits on that basis. See 2004 WL 1752820, at *7.

Novella filed a motion for class certification and this court determined that the class to be certified consisted of disability pensioners who were affected by defendants' practice of "freezing" pre-interruption pension benefit rates and thereby applying multiple benefit rates to determine pension credits. 2004 WL 303405 at *4-5. This court further determined that such a class meets all of the requirements of Fed. R. Civ. P. Rule 23(a) and Rule 23(b)(1) other than numerosity, which was to "be decided at a hearing to resolve the issue of numerosity as to the 'alternative' proposal class of Disability Pensioners." Id. at *7-8.

During a conference on February 16, 2005, this court ordered defendants to review their files and determine the number of people who were awarded a disability pension after January 1, 1976 that was calculated using two rates based upon a break in service. On April 21, 2005, defendants advised this court and plaintiff that 24 disability pensions were calculated using two rates based upon a break in service under the Plan after January 1, 1976. (Pauk Aff. Ex. 23)

II.

This court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132 and 28 U.S.C. § 1331.

III.

Fed. R. Civ. P. Rule 23(a) establishes four prerequisites for class certification: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. These four requirements are commonly referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. The burden of proving each of the requisite elements of Rule 23 is on the party seeking certification; failure to prove any element precludes certification. See Amchem Prod., Inc. v. Windsor, 521 U.S. 591 (1997). Here, only numerosity is disputed.

The numerosity requirement is satisfied when the class is so numerous that joinder of all members is impractical. Generally, "courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." Ansari v. New York Univ., 179 F.R.D. 112,

5

114 (S.D.N.Y. 1998). Novella argues that the proposed class consists of 24 members; defendants argue that, due to the running of the statute of limitations, the class consists of only eight members.

A. Statute of Limitations

It is undisputed that a six-year statute of limitations governs Novella's claim. See Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 134 (2d Cir. 2001); Miles v. New York State Teamsters Conf. Pension & Ret. Fund Empl. Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983). The parties dispute when the statute of limitations began to run.

Defendants argue that, of the 24 disability pensioners whose pensions were calculated using more than one rate due to a break in service, only eight have actionable claims. They argue that Novella's claim is based upon a single distinct event -- calculation of his pension -- and that the claims of the prospective class members accrued on the dates their pensions were calculated. Because only eight of the 24 pensions were calculated during the six years preceding the filing of Novella's complaint on March 19, 2002, defendants argue that the statute of limitations has run on the claims of the other 16 disability pensioners. (Def. Mem. of Law at 1)

An ERISA cause of action based upon the denial of a

claim for benefits "accrues, and the six-year limitations period begins to run, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." Miles, 698 F.2d 593, 598 (2d Cir. 1983) (citation and internal quotation marks omitted); see also Yuhas v. Provident Life and Cas. Ins. CO., 162 F. Supp. 2d 227, 231-32 (S.D.N.Y. 2001). However, the prospective class members were not denied benefits; they received benefits that they later discovered were miscalculated with resulting underpayment. The relevant date for fixing the accrual of such a claim is when a plaintiff was put on notice that the defendants believed the method used to calculate his disability pension was correct. Thus, the claim does not begin to run until a prospective class member inquires about the calculation of his benefits and the Plan rejects his claim that the benefits were miscalculated. See e.g., Davis v. NMY Pension & Welfare Plan, 810 F. Supp. 532, 536 (S.D.N.Y. 1992); Kiefer v. Ceridian Corp., 976 F. Supp. 829, 842-43 (D. Minn. 1997); Cotter v. E. Conf. of Teamsters Ret. Plan, 898 F.2d 424, 429 (4th Cir. 1990) (holding that the statute of limitations for a miscalculation of benefits claim began to run at "the time at which some event other than a denial of a claim should have alerted [the claimant] to his entitlement to the benefits he did not receive.").

Contrary to plaintiff's argument, it is irrelevant that this case involves the periodic underpayment of benefits as

7

opposed to a single denial of benefits, because such a continuing claims theory would circumvent the purpose of the statute of limitations. Order of R. Tel. v. Ry. Express Agency, Inc., 321 U.S. 342, 348-49 (1944) (statutes of limitation "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."). A new claim does not arise upon each monthly payment of a miscalculated benefit, because the miscalculation, once it is confirmed to the plaintiff as correct, is a distinct event that informs the parties of the calculation that will apply to all future payments. See Miele v. Penion Plan of New York State Teamsters Conference Pension & Ret. Fund, 72 F. Supp. 2d 88, 101 (E.D.N.Y. Aug. 25, 1999).

Novella did question the method by which his disability pension benefits were calculated, particularly the use of the two different benefit rates, and he was first told by defendants on May 9, 1996 that his plan was correctly calculated. (Morin Aff. in Support of Def. Motion for Summary Judgment, Ex. 9) Thus, as he filed his action in March 2002, his claim is not barred by the applicable statute of limitations. Defendants have provided no evidence as to when or if they informed any of the 24 potential class members that their disability pension benefits were correctly calculated, and until such a repudiation of benefits

8

was made the statute of limitations could not begin to run on their claims.

Notwithstanding that the burden of showing numerosity rests with the plaintiff, defendants have conceded that the class ordinarily would include 24 members but asserts that 16 of the 24 members have claims that are barred by the statute of limitations. That, if proved, is an affirmative defense. Therefore, the burden of proof as to whether the statute of limitations has run properly lies with defendants. See, e.g. Bano v. Union Carbide Corp., 361 F.3d 696, 709 (2d Cir. 2004). In any event, defendants appear willingly to have assumed this burden, because they raised the point and asserted some facts although they were mistaken as to the appropriate accrual date. Because the defendants have presented no evidence that they confirmed the correctness of the dual-rate benefits calculation more than six years before the filing of this lawsuit, this court cannot find the statute of limitations has run on the claims of any of the 24 proposed class members. Thus, the size of the proposed class is 24 members.

B. Numerosity

Novella must show that the proposed class of 24 members is so numerous that joinder of each member is impracticable. See Fed. R. Civ. P. Rule 23(a)(1). The requirement does not mean

9

that "joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." Northwestern Nat'l Bank v. Fox & Co., 102 F.R.D. 507, 510 (S.D.N.Y. 1984). Generally, courts will find that the numerosity requirement has been satisfied when the class compromises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer. See Ansari, 179 F.R.D. at 114. When classes of fewer then 25 members have been certified, courts almost always have cited special circumstances warranting certification despite the small class size. See CT-Alexanders Laing & Cruickshank v. Goldfeld, 127 F.R.D. 454, 455-57 (S.D.N.Y. 1989) (citing cases).

However, "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). In deciding whether a case between 21 and 40 class members meets the numerosity requirement courts must consider factors including: "(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members." Ansari, 179 F.R.D. at 114-15; see also Robidoux, 987

10

F.2d at 936.

The test for determining whether certifying a class will further judicial economy is not simply whether it is more convenient to try the case as a class action but is rather whether it will be difficult to join all of the prospective class members. CL-Alexanders, 127 F.R.D. at 457. During the three years this case has been pending, no individual member of the prospective class has filed or threatened to file his own action, so this factor weighs against class certification. See, e.g., Bayridge Volvo Am., Inc. v. Volvo Cars of N. Am., No. 01 Civ. 1890, 2004 WL 1824379 (S.D.N.Y. Aug. 16, 2004); Ansari, 179 F.R.D. at 115 (finding this factor weighs against class certification when no other plaintiffs brought suit against defendant during the two years since the program at issue ended); Robidoux, 987 F.2d at 936.

Geographic dispersion across multiple counties in New York generally supports a finding of numerosity. See, e.g., Brown v. Giuliani, No. 98 Civ. 7743, 2000 WL 869491, at *6 (S.D.N.Y. June 19, 2000) (geographic dispersion throughout New York supports finding of numerosity); Boyland v. Wing, No. 92 Civ. 1002, 2001 WL 7611780, at *7 (E.D.N.Y. Apr. 6, 2001) (geographic dispersion when prospective class members were located throughout all five boroughs); but see Moore v. Trippe, 743 F. Supp. 201, 211 (S.D.N.Y. 1990) (no geographic dispersion where members all

11

live in "the Metropolitan New York area"). However, geographic dispersion is not dispositive, particularly where the number of class members is small. See United States Fid. and Guar. Co. v. Madison Fin. Corp., No. 1 Civ. 3998, 2002 WL 31731020, at *7 (S.D.N.Y. Dec. 4, 2002). Here, defendants aver that 21 of the 24 members reside in the Northern Counties of the Southern District of New York. (Paul Aff. Ex. 25; McGovern Aff. at ¶4) However, the potential class members are spread over six counties, and they are geographically dispersed; this factor weighs in favor of a finding of numerosity.

Third, there is evidence that the prospective class members lack the financial resources to bring individual lawsuits. See Robidoux, 987 F.2d at 936 (finding that applicants for public assistance benefits are economically disadvantaged to the point where individual suits are difficult to pursue); Familienstiftung v. Askin, 178 F.R.D. 405, 410 (S.D.N.Y. 1998) (securities investors, many of whom invested over $1 million, have sufficient financial resources to protect their own interests). Here the prospective class members are retired and disabled union carpenters. Despite defendant's argument that the potential class members receive a "steady stream" of income from their monthly pension benefits, this living allowance does not provide the prospective class members with the financial resources to cover both their daily expenses and pursuit of a

12

legal claim, particularly when, I have already found, the members of the prospective class were underpaid with respect to their disability pension benefits.

The fourth factor, whether the prospective class members have the ability to file individual suits, does not weigh heavily for or against class certification. On one hand, unlike Ansari, where the prospective class members were educated foreign dentists who spent a year living and studying in the United States, the members of the present class are disabled union carpenters who likely receive their sole support from disability pension benefits, and are elderly. 179 F.R.D. at 115; see also Sherman v. Griepentrog, 775 F. Supp. 1383, 1389 (D. Nev. 1991). On the other hand, despite their relative lack of sophistication and financial resources, the potential class members have a monetary incentive to protect their own interests. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchem, 521 U.S. at 627 (1997) (quotation marks and citation omitted). Here, lead plaintiff Novella is seeking an additional $303.60 per month; he began receiving a disability pension on October 1, 1995, thus he is seeking a recovery of approximately $40,000, which is by no means a "small recovery." See Frank v. Eastman Kodak Co., 228 F.R.D. 174, (W.D.N.Y. 2005)

13

(finding no incentive for an individual to bring suit where recovery for one third of the class was below $1000); Barnes v. United States, 68 Fed. Cl. 492, 500 (Fed. Cl. 2005) (no incentive for individual to bring suit where recovery is in the hundreds of dollars); Carroll v. United Compucred Collections, Inc., 399 F.3d 620 (6th Cir. 2005) (no incentive for individual to bring suit where recovery is $60); Ansari, 179 F.R.D. at 116 ("A potential award of around $90,000 is hardly the type of de minimis recovery that would discourage individual class members from joining Ansari's suit or from filing suits in their own behalf."). The potential class members are likely seeking a recovery similar to Novella's; 16 of the 24 prospective class members began receiving disability pension benefits more than six years ago, making their recovery, if they are seeking the same monthly benefits increase as Novella, at least $22,000 each. Although the prospective class members are seeking to recover a fair amount of money, their lack of sophistication and financial resources outweighs that consideration.

Finally, Novella does not seek prospective relief of the sort that will have an effect on "future class members." See Robidoux, 987 F.2d at 936. This issue frequently arises when a plaintiff wants to certify a class that includes persons who may be injured in the future and who are, therefore, impossible to identify in the present. See Bruce v. Christian, 113 F.R.D. 554,

14

557 (S.D.N.Y. 1986). Novella seeks to certify a finite group of people all of whom are identifiable and all of whom have been injured, if at all, in the past; the Fund ceased to exist in 1998 when it merged into the Suburban New York Regional Council Pension Fund, which is now known as the Empire State Carpenters Pension Fund. This factor weighs against class certification.

In sum, the judicial economy and prospective relief factors weigh against certifying the proposed class; the geographic dispersion and financial resources factors weigh in favor of certifying the proposed class. Because the ability of the members of the proposed class to bring individual lawsuits is hampered by their lack of sophistication and finances and the potential recovery, while not "small," is, at most, half of that in Ansari, the ability to bring an individual lawsuit factor weighs in favor of a finding of numerosity. Upon a balancing of the five Ansari factors, it appears that plaintiff has met the numerosity requirement of Rule 23(a). The proposed class of disability pensioners who were subject to the dual-rate benefits calculation will be certified, and this case will proceed as a class action.

*       *       *

For the reasons set forth above, Novella's motion to certify this case as a class action is granted, and the case will proceed as a class action.

SO ORDERED:

Dated: New York, New York
August 2, 2006

Michael B. Mukasey
U.S. District Judge

16